NATIONAL LABOR RELATIONS
BOARD, Petitioner,
v.
HENRY HEIDE, Inc., Respondent.
No. 66, Docket 23078.

United States Court of Appeals,
Second Circuit.

Argued Oct. 5, 1954.

Decided Jan. 19, 1955.

George J. Bott, David P. Findling, A. Norman Somers, Frederick U. Reel and Rosanna A. Blake, Washington, D. C., for National Labor Relations Board.

Schmidt, Egan, Kenny, Smith & Murray, New York City (Godfrey P. Schmidt, of counsel), for respondent Henry Heide, Inc.

Arnold Cohen, New York City (Herbert A. Simon, Washington, D. C., of counsel), for respondent Local 452.

Before CLARK, Chief Judge, and L. HAND and FRANK, Circuit Judges.

FRANK, Circuit Judge.

In November, 1945, Local 50 was certified by the Board as the exclusive bargaining representative of respondent's employees in an appropriate unit. Thereafter, respondent and that Union entered into a series of collective bargaining agreements, the last of which was executed in July 1950, and by its terms expired on May 15, 1951. In February 1951, the Union suggested that the parties enter into negotiations toward a new

contract, but on April 12, before any agreement was reached, a rival union, Local 452, filed a representation petition with the Board. The Board conducted an election on May 17 which was won by Local 50. The defeated union, Local 452, thereupon filed objections to the conduct of the election. On October 9, 1951, the Regional Director issued his report finding no merit in the objections and thereupon certified Local 50 as the exclusive bargaining representative of respondent's employees. At that time a strike, theretofore called by Local 50, was in progress. During October 1951, the Respondent and Local 50 held several bargaining meetings, but reached no agreement on a contract, and Local 50's contract demands became one of the strike issues. During November, the parties met with representatives of the New York State Mediation Board, but were unable to settle their differences. Thereafter, they met with an arbitrator. As a result, a strike settlement agreement was signed on January 31, 1952. In February the parties resumed negotiations for a contract, and agreed on some minor provisions.

On February 15, Local 452 notified the Respondent that it claimed to represent a majority of the employees in the unit and intended to file a petition. The Respondent notified Local 50 of this claim, and stated that it doubted Local 50's majority. Representatives of the Respondent and Local 50 then consulted the Regional Office of the Board as to their rights and duties, and were advised by a Board agent that the Respondent should continue to bargain with Local 50, as the "certification year" had not expired.

On February 19, both the Respondent and Local 452 filed petitions with the Board. On March 6, the Regional Director dismissed the petitions as prematurely filed in relation to the certification year, and on April 2 the Board, on appeal, sustained the Regional Director's rulings. On April 4, Local 452 filed a decertification petition. On April 17, the Regional Director dismissed this petition also as untimely, and on May 14, the Board sustained his ruling. During the pendency of these petitions before the Regional Director and the Board, the Respondent admittedly refused to bargain with Local 50.

On these facts, the Board concluded that the respondent-employer had violated Section 8(a) (5) of the Act by refusing to bargain with Local 50 four months after it had been certified. The Board rejected respondent's contention that it was justified in refusing to bargain pending final disposition of various petitions before the Board.

■ 1. We think the Board's finding of these facts was supported by the "record as a whole"; and we hold that, on those findings, the Board reached the correct legal conclusion.

■ Respondent points to a doctrine originating with the Board that although an employer must bargain with a certified unit for a reasonable period, normally one year, he is relieved from that obligation if "unusual circumstances" are present.[1] All of the Board's "unusual circumstances" cases antedated the Taft-Hartley Act.[2] The language of that Act[3], the failure of the Board to find "unusual circumstances" in any case

---

1. N.L.R.B. 11th Annual Report, p. 43 (1946). See cases cited in footnote 2.

2. The Board has departed from the one-year certification period in the following instances:
   (a) where the very identity of the certified bargaining unit was in doubt because of shifts in affiliation resulting from a schism. Brightwater Paper Co., 54 N.L.R.B. 1102 (1942); Carson Pirie Scott, 69 N.L.R.B. 935 (1946); Jasper

Wood Products, 72 N.L.R.B. 1306 (1947).
   (b) where the certified bargaining unit no longer exists or is inactive. Public Service Electric & Gas Co., 59 N.L.R.B. 325 (1944); Nashville Bridge Co., 49 N.L.R.B. 629 (1943).
   (c) where the size of the bargaining unit was expected to alter drastically. Celanese Corporation of America, 38 N.L.R.B. (1942).

3. "No election shall be directed in any

since enactment of the Act,[4] and the recent authoritative interpretation by the Supreme Court of the Board's policy,[5] all suggest that an employer, acting on his own volition, may not, within the certification period, cease to bargain with a certified union because of "unusual circumstances": "If an employer has doubts about his duty to continue bargaining, it is his responsibility to petition the Board for relief, while continuing to bargain in good faith at least until the Board has given some indication that his claim has merit." Brooks v. National Labor Relations Board, 75 S. Ct. 176, 181. And here the Board has found—and its finding is supported by the record as a whole—that no unusual circumstances exist to warrant unilateral discontinuance of bargaining by the employer.

■ 2. The Board also held that the following facts, as found by the Board—these findings being sufficiently supported by the record as a whole—constituted a violation of Section 8(a) (5): "On October 10, 1952, the Respondent, by letter, notified Local 50 that it was terminating recognition because the certification year had expired and it doubted Local 50's majority. Thereafter, Local 452 demanded recognition and threatened economic sanctions unless it was granted. The Respondent notified Local 50 of this demand, stated that it had decided to recognize whichever union could show to some impartial third party pledge cards indicating majority support, and invited Local 50 to participate in the card check. Local 50 refused on the ground that its certification required the Respondent to recognize and bargain with it. The Respondent then arranged for a card check, which was conducted on December 10. Local 50 did not participate. The results showed that Local 452 held applications of 216 of the 361 employees in the unit. On January 7, 1953, the Respondent entered into a maintenance-of-membership agreement with Local 452." The Board said that this termination of recognition of Local 50 at the end of the "certification year" would have been justified, if respondent in good faith had doubted that union's majority position. But the Board stated that, as it had held in a previous case, one of the essential prerequisites to a finding "that the employer raised the majority issue in good faith is that it must *not* have been raised in a context of illegal anti-union activity or other conduct by the employer aimed at causing disaffection from the union or indicating that, in raising the majority issue, the employer was merely seeking to gain time in which to undermine the union." The Board added: "In this case, as we have found above, the Respondent, during the certification year, had violated Section 8(a) (5), and a charge alleging that violation was then pending before the Board. Under these circumstances, the Respondent could not lawfully refuse to bargain with Local 50 until the issue had been decided by the Board. The Respondent's termination of recognition of Local 50 and its subsequent recognition of Local 452 therefore constituted a violation of Section 8(a) (5)."[6] We agree with the Board.

■ 3. We think the Board correctly held that the respondent violated Section 8(c) (1), (2) and (3), by granting exclusive recognition to Local 452 and by

bargaining unit or any subdivision within which in the preceding twelve-month period, a valid election shall have been held." 29 U.S.C.A. § 159(c) (3).

4. The Board has, however, continued to pay lip service to the "unusual circumstances" qualification. See Lift Trucks, Inc., 75 N.L.R.B. 998, 999 (1948); Mengel Company, 80 N.L.R.B. 705, 719 et

seq. (1948); Belden Brick Co., 83 N.L.R.B. 465, 466 (1949); Arthur A. Borchert d/b/a/ West Fork Cut Glass Company, 90 N.L.R.B. 944, 945–946 (1950).

5. Brooks v. National Labor Relations Board, 75 S.Ct. 176.

6. See also the portion of the Board's decision quoted infra, in point 4 of this opinion.

entering into the contract with that union.[7]

4. The Board made the following findings of facts [8] which are supported by the record as a whole: "On May 28, 1952, after the Board had sustained the Regional Director's dismissal of Local 452's decertification petition, the parties again met. At this time, the Respondent expressed doubt of Local 50's majority and its belief that the employees had joined Local 452, and announced that, under these circumstances, it would not execute any agreement for a term beyond October 9, 1952, the end of Local 50's certification year. When Local 50, which had proposed a 2-year term, refused to accept this limitation, the Respondent declared that a stalemate had been reached. On the following day, Local 50 requested another meeting. The Respondent refused, saying that a deadlock had been created by Local 50's 'manifestly unalterable decision to insist upon a two-year contract and (the Respondent's) equally firm decision to reject a contract which goes beyond October 9, 1952,' and that, while that deadlock lasted, it saw 'no useful purpose that could be served by further meetings.' Local 50 replied that it had made no 'unalterable decision to insist upon a two year contract,' that its proposal was 'subject to discussion, alteration and modification,' and that the matter was 'subject to negotiation and contingent upon agreement on more important matters of collective bargaining.' The Respondent replied that it would resume negotiations only if Local 50 was willing, among other things, to negotiate a contract ending on October 9, 1952."

The Board concluded that, in this respect, respondent further violated Section 8(a) (5). The Board said that an employer does not act unlawfully in insisting on a contract limited to the "certification year," provided the employer does so in good faith and for no unlawful purpose. But the Board found a lack of good faith on respondent's part. If this finding rested exclusively on respondent's adamant refusal to bargain on this single item, we would hold that the Board erred. See N. L. R. B. v. American National Insurance Co., 343 U.S. 395, 405, 72 S.Ct. 824, 96 L.Ed. 1027. But that refusal was not an

7. The Board said: "The Trial Examiner also found that, by granting exclusive recognition to Local 452 and entering into a union-shop agreement with it, the Respondent violated Section 8(a) (2) of the Act. The record shows that the agreement did not in fact provide for a union shop, but for maintenance of membership. However, at the time of the execution of the contract on January 7, 1953, Local 50, as found above, was still the statutory representative of the Respondent's employees, and the Respondent was therefore under a duty to deal exclusively with it. Under these circumstances, the execution of a contract with Local 452, granting it exclusive recognition, constituted unlawful support to that organization. The inclusion in the contract of a provision requiring members of Local 452 to retain their membership as a condition of employment clearly rendered that support more potent. Moreover, even if Local 50 had not been the statutory representative, the Board holds that an employer confronted with claims to recognition by rival unions violates Section 8(a) (2) if he recognizes one of them on the basis of a card showing. Accordingly, we agree with the Trial Examiner that the Respondent assisted and supported Local 452, in violation of Section 8(a) (2) and (1) of the Act. We also agree with the Trial Examiner that by executing the agreement of January 7, 1953, with Local 452 the Respondent violated Section 8(a) (3) of the Act. As noted above, the contract provided in part for maintenance of membership in Local 452 as a condition of employment. Such a provision clearly encourages membership in other labor organizations, and is lawful under Section 8(a) (3) only if, among other things, the contract is made with the duly designated representative of the employees. As Local 452 was not the representative of the Respondent's employees at the time the agreement was made, the execution of the contract providing for maintenance of membership in Local 452 constituted a violation of Section 8(a) (3)."

8. More detailed findings on this score appear in the Trial Examiner's Intermediate Report. The Board adopted those findings.

isolated fact. The Board could properly view that fact in its context.[9] Just as one may interpret Act Two of a drama in the light of Acts One and Three, so the Board, taking into account all respondent's behavior with reference to Local 50, including what respondent did before and after this refusal, could reasonably find an absence of good faith. And the following statement, contained in the Board's opinion, persuades us that such was the basis of its finding. "On the record as a whole we are convinced that the Respondent, on and after February 19, 1952, had no intention of honoring Local 50's certification, but was merely attempting to delay reaching any agreement during the certification year, in the belief that at the end of the year it could terminate recognition. In so finding, we rely on the Respondent's entire course of conduct, including its refusal to bargain while petitions were pending, its insistence on limiting the term of the contract to the certification year as a condition of bargaining, its termination of recognition of Local 50 immediately upon expiration of the certification year, and finally its recognition of Local 452 on the basis of a card check while a complaint alleging refusal to bargain with Local 50 was pending before the Board. We therefore find that at all times since February 19, 1952, the Respondent has refused to bargain in good faith with Local 50, in violation of Section 8(a) (5) of the Act." While we might not thus find, we cannot say that the Board, in so finding, proceeded on the basis of unreasonable inferences.

Enforcement granted.

L. HAND, Circuit Judge (concurring).

The Board's order directed Heide to stop (a) refusing to bargain with Local 50; (b) recognizing Local 452; (c) performing its agreement of January 1953 with Local 452, until the Board had certified it; (d) and (e) assisting or encouraging Local 452 or discouraging Local 50; and (f) interfering with its employees in their right to bargain collectively. The "Grounds" for these three directions were, (a) that Heide had refused to bargain with Local 50 during a period in 1952 when Local 452 and itself had filed petitions to disestablish Local 50; (b) that after these petitions had been dismissed as premature, in its dealings with Local 50 Heide in bad faith had refused to make any contract beyond the end of the certified year (Oct. 9, 1952); and (c) that it had refused to recognize Local 50 after that time. I am not satisfied with the reasons given by the Board for finding that Heide's refusal was in bad faith. The first reason is that it had refused to bargain with Local 50 during the pendency of its petition and Local 452's to revoke Local 50's certification. I can see no connection between that and its good faith in supposing that after Oct. 9, 1952, Local 50's right to bargain might have ended. Besides, it was a natural enough mistake to think that the pendency of the petitions tolled Local 50's authority. The second reason is even less plausible: i. e. that Heide conditioned "any further bargaining on Local 50's acceptance of that provision." It was no evidence of Heide's belief that Local 50 might have already ceased to represent the employees that it "adamantly" refused to make a contract which would go beyond the year. It is not bad faith to be inflexible in asserting your doubts. "Grounds" (a) and (c) of the Board's decision support all the provisions of its order; and I would enforce it in toto because of them, but of them alone.

9. Cf. N. L. R. B. v. National Shoes, 2 Cir., 208 F.2d 688, 692.