**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**The PROOF COMPANY, Respondent.**

**No. 11828.**

United States Court of Appeals
Seventh Circuit.

March 27, 1957.

Marcel Mallet-Prevost, Asst. General Counsel, N. L. R. B., Washington, D. C., Ross M. Madden, Edward T. Maslanka, Chicago, Ill., Theophil C. Kammholz, Gen. Counsel, Arnold Ordman, Florian J. Bartosic, Washington, D. C., for National Labor Relations Board.

Albert M. Stern, Stern, Milmet & Rossier, Detroit, Mich., for respondent.

Before FINNEGAN, LINDLEY and SCHNACKENBERG, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

By its petition, the National Labor Relations Board seeks enforcement of its order against The Proof Company, respondent herein and referred to in this opinion as the "Company".

On June 28, 1954, following a consent election, the Board certified the International Union, United Automobile, Aircraft and Agricultural Implement Workers of America, CIO, Local 943 (referred to herein as the "Union") as exclusive bargaining representative of the Company's employees. After certification and an exchange of correspondence, the two parties met five times during July and August of 1954 for negotiation purposes. Pending consummation of a final agreement the Union submitted a proposed "temporary agreement" which included, *inter alia*, grievance adjustment procedure, provisions for union security, checkoff of fees and dues and use of company bulletin boards.

The Company took the position that it should not be required to join in such a temporary agreement and did not, in fact, sign it.

The Company admits that, in response to a request by the Union, it temporarily allowed preferential seniority to officers of the Union and the members of its bargaining committee from the time of the discussion of the agreement until negotiations were suspended on August 19, 1954. At some time during the negotiation meetings the Company agreed that the Union could, for its proper purpose, utilize a bulletin board previously installed by the Company. The record shows that the Union did so use the board until late October, 1954. The parties did not succeed in reaching a final agreement by August 19th and negotiations were suspended on that date subject to the call of either party for further bargaining meetings.

On September 10th the Company unilaterally and without notice to the Union withdrew the preferential seniority which it had theretofore granted and put into effect. In October the Company, again without notice to the Union, discontinued its practice of permitting the Union to post notices on the plant bulletin board, nailed the board shut, and thereafter removed notices which the Union posted on plant property.[1]

In the meantime a petition signed by a majority of the bargaining unit was filed with the Regional Director of the Board asking that the Union be decertified. On September 15, 1954, the Regional Director dismissed the petition as untimely. No appeal was taken.

On and after September 13, 1954, the Union made repeated requests for further bargaining conferences, which the Company rejected on the ground that the Union no longer represented a majority of the employees in the appropriate bargaining unit even though the Company knew after September 15th that the petition for decertification had been dismissed.

Upon the foregoing facts the Board concluded that the Company violated Section 8(a) (1) and (5) of the National Labor Relations Act[2] in that, less than three months after a valid certification, it refused to bargain collectively with the Union, and concluded further that respondent independently violated Section 8(a) (1) of the same act by, unilaterally and without notice to the Union, revoking the preferential seniority previously accorded the officers of the Union and the members of its bargaining committee and denying the Union use of the plant bulletin board for the posting of notices.

Accordingly, the Board ordered respondent to cease and desist from engaging in the unfair labor practices found, to bargain collectively with the Union upon request and to post appropriate notices.

---

1. The record shows that Charles V. Kilburn, president of the Company, testified that as to the use of the bulletin board, "It got to be a chaotic situation where another group and themselves [the group desiring decertification and the Union] were both trying to post notices and it got to a point that employees were almost at blows, instead of attending to their work. I decided we would nail the bulletin board shut and it would not be used by anyone."

2. 61 Stat. 136, 29 U.S.C.A. § 158(a) (1) and (5).

It is this order that the Board seeks to enforce in this proceeding.

1. The Company asserts that the events surrounding the suspension of negotiations with the Union in this cause constituted such unusual circumstances that the Company was justified in refusing to bargain further with the Union. However it acknowledges that, absent such unusual circumstances, an employer is obligated to bargain with a certified union for a reasonable period of time, normally one year after the date of the certification. N. L. R. B. v. Armato, 7 Cir., 199 F.2d 800 and N. L. R. B. v. Henry Heide, Inc., 2 Cir., 219 F.2d 46. In the case of Brooks v. N. L. R. B., 348 U.S. 96, at page 98, 75 S.Ct. 176, at page 178, 99 L.Ed. 125, which is factually similar to the case at bar, the Supreme Court said:

"The issue before us is the duty of an employer toward a duly certified bargaining agent if, shortly after the election which resulted in the certification, the union has lost, without the employer's fault, a majority of the employees from its membership."

On this issue the Supreme Court held that, notwithstanding repudiation of the bargaining agent by the majority of the employees, the employer was obligated to honor the certification for a reasonable period of time, normally one year, and that the refusal to do so constituted a violation of Section 8(a) (1) and (5) of the Act.

We hold that there were no unusual circumstances in this case sufficient to avoid application of the one-year rule. The fact that here, as in Brooks, a majority of the employees may have repudiated the Union, or may have indicated a desire for different representation, does not absolve the employer of his bargaining obligation. Failure to fulfill that obligation constituted a violation of Section 8(a) (1) and (5) of the National Labor Relations Act. Brooks v. N. L. R. B., 348 U.S. 96, 75 S.Ct. 176, 99 L. Ed. 125.

2. An employer must bargain with the duly designated representative of his employees concerning changes in the terms and conditions of employment and unilateral action in that regard is a violation of Section 8(a) (1). As was said in Armstrong Cork Co. v. N. L. R. B., 5 Cir., 211 F.2d 843, at page 847:

"Good faith compliance with Section 8(a) (5) and (1) of the Act presupposes that an employer will not alter existing 'conditions of employment' without first consulting the exclusive bargaining representative selected by his employees, and granting it an opportunity to negotiate on any proposed changes."

Nor can it be doubted that seniority provisions and bulletin board use are among those "conditions of employment" which the Act requires to be the subjects of collective bargaining. Inland Steel Co. v. N. L. R. B., 7 Cir., 170 F.2d 247, 252, 12 A.L.R.2d 240 and N. L. R. B. v. Reed & Prince Mfg. Co., 1 Cir., 205 F. 2d 131, 136.

The Company seems to feel that, insofar as its concessions with regard to preferential seniority and the bulletin board were regarded by it as of a temporary or interim nature pending final agreement on the complete contract, it had a right to rescind its concessions at any time. In this there is error. They were changes in the conditions of employment, suggested by the Union and agreed to by the Company. The informal nature of their origin does not exclude them from the dignity of agreements on working conditions or render them subject to unilateral action by either party. They were temporary only in the sense that they might subsequently be changed by the parties or included in a general agreement covering all working conditions and terms of employment.

In accordance with the views herein expressed, the order of the Board entered February 3, 1956 will be enforced by this court.

Enforced.

FINNEGAN, C. J., concurs in result.