NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

Harold HIBBARD and Ben R. Stein, individually and as a partnership, d/b/a Hibbard Dowel Company, Respondents.

No. 12590.

United States Court of Appeals
Seventh Circuit.

Jan. 13, 1960.

Stuart Rothman, General Counsel, Margaret M. Farmer, Atty., Thomas J. McDermott, Asso. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Frederick U. Reel, Attys., N. L. R. B., Washington, D. C., for petitioner.

Harold Wexler, Chicago, Ill., for respondent.

Before KNOCH and CASTLE, Circuit Judges, and GRUBB, District Judge.

KNOCH, Circuit Judge.

Pursuant to Section 10(e) of the National Labor Relations Act, as amended, 29 U.S.C.A. § 151 et seq., the National Labor Relations Board seeks enforcement of its Order against Harold Hibbard and Ben R. Stein, individually and as a partnership doing business as Hibbard Dowel Co.

After hearing, the Board's trial examiner issued his Intermediate Report in which he found that Respondents had violated the Act in making threats and promises and in soliciting employees to abandon Local 18-B, Furniture Workers of America, AFL-CIO (certified by the Board as the statutory bargaining representative of Respondents' employees); in unlawfully supporting another labor organization; in discharging four employees for union activity; and in refusing to bargain with the aforesaid Union in good faith.

Respondents filed exceptions only to the findings of discriminatory discharge of employees and refusal to bargain. The four employees have been reinstated and only the charge of refusal to bargain is seriously contested.

Respondents filed a motion to dismiss the petition for enforcement on the ground that it constitutes an abuse of the N.L.R.B. General Counsel's powers, that it is, in fact, an act of reprisal for Respondents' refusal to sign a particular contract demanded by the Union, and that it subverts the Board's real decision and Order.

After the Intermediate Report, in the hearing before the Board itself, Respondents alleged for the first time that an attorney for the General Counsel, in a settlement conference with Respondents alone (the Union being absent) had threatened Respondents with issuance of a complaint unless Respondents signed the specific contract sought by the Union. It was, and still is, the contention of the Union (and the Trial Examiner so found) that an agreement as to terms had been reached in an off-the-record conference held between the Union and Respondents (in a recess during the hearings then pending before the trial examiner) and that all parties had indicated a willingness to sign the contract embodying that agreement; but that when the agreement had been reduced to writing, respondents refused to sign, although the contract consisted only of the agreed terms.

The Board did not adopt the trial examiner's recommendation for an Order directing Respondents to sign this contract because there was no testimony in the record as to what had transpired at the off-the-record conference. Therefore, the Board issued its "normal bargaining" order, without reference to any specific contract.

The Board, assuming *arguendo*, that the alleged threats had been made by its counsel, said:

"*  *  *  we note that the Respondents committed the bulk of the unfair labor practices found before the making of such threat, and the finding of the violations and the necessity of purging them could not

be affected by the making of such a threat. Furthermore, the record does not establish that the Respondents' bargaining position was in any way impaired as a result of the alleged misconduct of the attorney for the General Counsel or that they were in any way prejudiced thereby."

Respondents also asserted, for the first time, misconduct by the trial examiner, himself, in engaging improperly in conciliation or mediation. The evidence shows that he suggested further bargaining meetings, suspended hearings for that purpose, and once remained present during such a meeting. It does not appear that he participated in any other way. The Board concluded:

"While, perhaps, better practice would have dictated that the Trial Examiner should have confined himself to the trial of the case rather than taking the initiative in suggesting further bargaining negotiations, and that at least he should have absented himself at all times while the parties engaged in collective bargaining, we conclude that the Trial Examiner did not perform any conciliation or mediation functions, or so conduct himself as to require dismissal of the complaint. Moreover, the Respondents engaged in the bargaining negotiations in question at the request of the Trial Examiner without making any objection at the hearings to the Trial Examiner's conduct on this score."

Respondents contend that they had an agreement with the Regional Director to close the case without further proceedings. They rely on a letter sent by their attorney to the Regional Director, N.L.R.B., April 23, 1958, making an offer of settlement which reads in part:

"Our clients are prepared to offer reinstatement to the employees as listed in said case, and to post the customary notices in their plant.

"We are prepared to bargain collectively with the union and indeed at the time of the writing of this letter, we have arranged for a meeting with said Union on April 24th, 1958, at 2:00 P.M. to resume negotiations which the Union had previously terminated regarding a proposed contract.

"This offer is made on condition that the Board accept same as full compliance with the decision and order of the Board and upon performance close the case without further proceedings.

"We specifically reserve on behalf of our clients and do not waive any rights which they may have in the review of the decision heretofore rendered in the event our offer is not accepted.

"Please advise us of your position."

In response, the attorney for the N.L.R.B., 13th Region, wrote in part:

"I reported your offer of $3000.00 in full settlement of all back pay involved in the above case to the Regional Director. This figure is acceptable to this office. * * * I am also enclosing a copy of the Notice which your client is to post in the plant for a period of 60 days.

"After this period has expired and if your client has complied with all the terms and conditions set forth in the Notice then this office will recommend to Washington that this case be closed."

■■ The Board contends that Respondents have not "complied with all the terms and conditions" in that they have failed to bargain in good faith. The parties are in sharp dispute as to whether or not Respondents have complied with the Board's Order to bargain. Respondents assert that, through no fault of theirs, they and the Union representatives have arrived at an impasse. The Board, however, found that Respondents' actions, through more than a year of purported bargaining, have been marked by evasiveness, deliberate delay, re-opening of discussion of points on which agreement had been reached, and insist-

ence on new and different proposals patently unacceptable. For example, when negotiations appeared to be reaching a conclusion, Respondents suddenly established a wage incentive system without consulting the Union, and proposed a ten-year contract with a minimum wage five cents over the Fair Labor Standards Act, 29 U.S.C.A., § 201 et seq., national minimum with no re-opening clause. When the Union agreed to a five-year contract, renegotiable on wages after three years, then Respondent demanded a five-year "no strike" provision. After the Union had won the Board election, despite Respondents' various unfair labor practices committed during the period prior to the election, Respondents reopened bargaining conferences through their attorney. Respondents were seldom present at the conferences. The evidence showed a complete lack of cooperation by Respondents or their attorney. Respondents failed to prepare their Attorney for these sessions by discussing with him such terms as had been previously the subject of bargaining and did not authorize him to agree to any terms with the Union. One is not bargaining in good faith if he is repeatedly absent from bargaining sessions and sends, in his stead, a representative who is without authority; nor is it bargaining in good faith to delay meetings unreasonably without good cause. N. L. R. B. v. Martin Bros. Box Co., 7 Cir., 1942, 130 F.2d 202, 206–208, certiorari denied 317 U.S. 660, 63 S.Ct. 59, 87 L.Ed. 531; or to grant concessions to employees without prior negotiation with the Union on such questions, N. L. R. B. v. Proof Co., 7 Cir., 1957, 242 F.2d 560, 562, certiorari denied 355 U.S. 831, 78 S.Ct. 45, 2 L.Ed.2d 43; Superior Engraving Co. v. N. L. R. B., 7 Cir., 1950, 183 F.2d 783, 790, certiorari denied 340 U.S. 930, 71 S.Ct. 490, 95 L. Ed. 671.

The chain of events shown in the record amply supports the Board's conclusion that Respondents made no genuine effort to bargain in good faith. Their conduct evidenced a studied procedure planned to give the mere appearance of bargaining, while, at the same time, withholding customary action which would permit arrival at a possible agreement.

◼◼  Motion to dismiss this proceeding is denied. We do not agree with Respondents that the alleged misconduct of the attorney for the General Counsel or of the Trial Examiner requires dismissal of these proceedings. The petition for enforcement of the Board's Order is granted.