**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**SOUTHERN CALIFORNIA DISTRICT COUNCIL OF LABORERS and Laborers International Union of North America, Local 585, Respondents.**

**No. 26387.**

United States Court of Appeals, Ninth Circuit.

May 24, 1971.

Herman M. Levy (argued), Janet Skaare Morris, Attys., Marcel Mallet-Prevost, Asst. Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Arnold Ordman, Gen. Counsel, NLRB, Washington, D. C., Abraham Siegel, Director, NLRB, Los Angeles, Cal., for petitioner.

Lionel Richman (argued), Gerald Goldman, of Richman & Garrett, Rutan & Tucker, Los Angeles, Cal., for respondents.

Before CARTER and HUFSTEDLER, Circuit Judges, and BYRNE,* District Judge.

HUFSTEDLER, Circuit Judge:

The National Labor Relations Board ("the Board") petitions for enforcement of its order directing respondent unions to cease and desist from threatening the general contractor Ernest W. Hahn, Inc. ("Hahn") or Hahn's subcontractor Masonry Builders, Inc. ("Masonry") with a strike in order to force these employers to assign to employees represented by respondents the tasks of assembling and dismantling scaffolding 14 feet or more in height. The Board found that all parties to this jurisdictional dispute had agreed to be bound by the determination of the National Joint Board for Settlement of Jurisdictional Disputes, Building and Construction Industry ("Joint Board"). It accepted the Joint Board's decision without making an independent determination. Because we conclude that Masonry did not agree to be bound by the Joint Board's determination, we remand for a hearing under section 10(k) of the National Labor Relations Act, 29 U.S.C. § 160(k).

Hahn, a general contractor, subcontracted masonry work to Masonry. In 1968, a dispute arose over whether Masonry's scaffolding exceeding 14 feet in height should be erected and dismantled by Masonry's employees, who were represented by Laborers International Union of North America Local 585 ("Laborers"), or by members of the United Brotherhood of Carpenters and Joiners Union ("Carpenters"). The Carpenters unilaterally submitted this dispute to the Joint Board. In 1969, the Joint Board awarded the work to the Carpenters. Thereafter, Hahn's general superintendent was informed by Masonry that the Laborers would perform the scaffolding work. The general superintendent then asked Espinoza, the field representative of the Southern California District Council of Laborers ("Council of Laborers"), what position the Laborers would take if Hahn removed the scaffolding from Masonry and assigned it to employees represented by the Carpenters. Espinoza replied that he "would remove all the Laborers from the job and file charges with the National Labor Relations Board * * *."

Section 10(k) of the Act requires the Board to determine which of two or more groups of employees is entitled to do certain work for an employer.

---

* Hon. Wm. M. Byrne, Senior Judge, United States District Court for the Central District of California.

(NLRB v. Radio and Television Broadcast Engineers Union, Local 1212, IBEW (1961) 364 U.S. 573, 579, 81 S.Ct. 330, 5 L.Ed.2d 302.) However, if the parties agree upon a means for resolving the dispute, the Board must accept the voluntary settlement. (NLRB v. Local 825, Operating Engineers (3d Cir. 1969) 410 F.2d 5, 8–9, remanded on other grounds (1971) 400 U.S. 297, 91 S.Ct. 402, 27 L.Ed.2d 398; Iron Workers Local 25 (Pittsburgh Plate Glass Co.) (1959) 125 N.L.R.B. 1035, 1038; Lathers Local 2 (Acoustical Contractors Ass'n) (1958) 119 N.L.R.B. 1345, 1351–54.) The threshold question is whether Masonry has agreed to accept the determination of the Joint Board.

Hahn, a member of the Association of General Contractors ("AGC"), is bound by two collective bargaining agreements negotiated by the AGC with the Laborers and with the Carpenters. Both agreements require the submission of jurisdictional disputes to the Joint Board.[1] Additionally, the Laborers' agreement provides that the general contractor Hahn should require its subcontractors to observe the terms of the collective bargaining agreement.[2] The Carpenters' agreement specifically requires the general contractor to bind his subcontractors to the decisions of the Joint Board.[3]

Through its membership in the Mason Contractors Exchange of Southern Cali-

1. The Laborers' agreements with the AGC provides:

"All jurisdictional disputes between the Union or any of its Local Unions on whose behalf this Agreement is made, with any other Unions affiliated with the AFL–CIO shall be determined in the manner and by the procedure established by the National Joint Board for the Settlement of Jurisdictional Disputes or in the event the National Joint Board for the Settlement of Jurisdictional Disputes is abolished, the procedures established by the Building and Construction Trades Department of the AFL–CIO shall prevail. Such determinations shall be binding upon and accepted by the Contractor and the Union."

The Carpenters' contract with the AGC provides at Article III, § 304:

"All jurisdictional disputes between the Union and any other unions affiliated with the Building and Construction Trades Department, AFL–CIO, shall be determined in the manner and by the procedure established by the National Joint Board for the Settlement of Jurisdictional Disputes or, in the event the National Joint Board for the Settlement of Jurisdictional Disputes is abolished, the procedures established by the Building and Construction Trades Department of the AFL–CIO shall prevail. Such determination shall be binding upon and accepted by the Contractors and the Union."

2. The Laborers' contract with the AGC provides at Article I, subsection C, paragraph 2:

"If the Contractor, party hereto, shall subcontract work as defined herein, pro-

vision shall be made in such subcontract for the employment of workmen furnished by an AFL–CIO Building and Construction Trades Union or the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America for the observance by the said subcontractor and his subcontractors of all the terms of this Agreement, including, but not limited to, the payment of wages and fringe benefits."

3. The Carpenters' contract with the AGC provides at Article I, § 103.3–103.5:

"103.3. If the Contractor or subcontractors shall subcontract jobsite work covered under the jurisdiction of the United Brotherhood of Carpenters and Joiners of America, including the furnishing and installation of material, performance of labor, and the operation of equipment, provision shall be made in written contract for the observance and compliance by his subcontractors with the full terms of this Agreement.

"103.4. The Contractor shall provide in his contract with the subcontractor the following provision:

"The subcontractor accepts and agrees to be bound by the Plan for settling Jurisdictional Disputes Nationally and Locally, as the same now is, or hereafter may be amended, and to be bound by the decisions of the National Joint Board for the Settlement of Jurisdictional Disputes as constituted under said Plan. The subcontractor agrees that he will bind any of his subcontractors to said Plan in the same manner and to the same effect as hereinabove provided with respect to him.

"103.5. In particular, the subcontractor agrees to be bound by the provision

fornia, Inc., Masonry has a collective bargaining agreement with the Council of Laborers. This agreement mentions neither the settlement of jurisdictional disputes nor the Joint Board. Masonry does not have a collective bargaining agreement with the Carpenters. Masonry's subcontract with Hahn provides that Masonry will "[c]omply with all terms and conditions of the Labor Agreement between the Association of General Contractors and the A.F. of L. Building & Construction Trades Unions now in existence and any revision or extension thereof."

The Board contends that the quoted clause in Masonry's subcontract is an agreement by Masonry to submit jurisdictional disputes to the Joint Board. The respondent unions reply that Masonry did not so agree: Masonry never signed a stipulation that it submitted to the Joint Board's authority, and Masonry refused to accept the Joint Board's decision.

As recently as 1965, the Joint Board's procedures bound only those contractors who:

"have signed a stipulation setting forth that they are willing to be bound by the terms of the agreement establishing the Joint Board, or who are members of a signatory association of contractors with authority to bind its members, or who are parties to a collective-bargaining agreement providing for the settlement of jurisdictional disputes under the procedures herein set forth * * *." (Millwrights Local 1102 (Don Cartage Co.) (1966) 157 N.L.R.B. 10, 16 n. 6, remanded for determination of juris-

dictional dispute sub nom. Quinn v. NLRB (D.C.Cir. 1966) 53 L.C. ¶ 11,156; accord, NLRB v. Local 825, Operating Engineers (3d Cir. 1964) 326 F.2d 213, 216; Cement Masons Local 694 (Edgar H. Hughes Co.) (1963) 144 N.L.R.B. 1358, 1362.)

Although the Laborers argue that Masonry did not sign a stipulation, they introduced no evidence that, as of the time the dispute in question arose, the Joint Board required a stipulation. Without this proof, we cannot infer that Masonry's failure to sign a stipulation precluded action by the Joint Board.

The unions' contention that Masonry's rejection of the Joint Board's determination requires a section 10(k) hearing is without merit. If the employer has agreed upon a voluntary means of settling the dispute, it cannot avoid an adverse decision by refusing to comply. To hold otherwise would condone breaches of the agreement and discourage voluntary settlements. (Ironworkers Local 708 (Armco Drainage & Metal Products Co.) (1962) 137 N.L.R.B. 1753, 1757.)

Nevertheless, the clause in question is not without ambiguity. In Building & Const. Trades Council v. NLRB (1964) 117 U.S.App.D.C. 239, 328 F.2d 540, the union argued that a similar clause in the prime contract[4] only required subcontractors to meet union standards in wages, hours, and working conditions. (Id. at 541.) In Construction, Production and Maintenance Laborers Union, Local 383 v. NLRB (9th Cir. 1963) 323 F.2d 422, the union picketed to secure a collective bargaining agreement with a general contractor. The agreement contained a similar clause[5] designed to pre-

of the Plan which states: 'Any decisions or interpretation of the Joint Board (or hearings panel) shall immediately be accepted and complied with by all parties signatory to this Agreement.' "

4. The clause in question there read:
   "If the Contractors, parties hereto, shall subcontract work, as defined herein, provision shall be made in such subcontract for the observance by said Subcontractor of the terms of the appropriate labor

agreement covering the work involved with the appropriate Union affiliated with the Building and Construction Trades Department of the AFL–CIO." (Building & Const. Trades Council v. NLRB (1964) 117 U.S.App.D.C. 239, 328 F.2d 540, 541 n. 1.)

5. The proposed agreement contained the following clause:
   "That if the Contractors, parties hereto shall subcontract construction work * * * the terms of said Agreement shall

vent the subcontracting of work to non-union employers. Although Hahn's contract with the Laborers refers to the Joint Board, the Laborers' contract with Masonry omits any mention of jurisdictional disputes. The omission suggests that the Laborers do not regard the settlement of jurisdictional disputes as a compulsory term or condition of their collective bargaining agreements. Since the clause is subject to varying interpretations, we are not satisfied that Masonry and Hahn intended the clause to bind Masonry to the Joint Board's procedures.

The Board has not provided us with persuasive authority for construing the disputed clause to require submission of jurisdictional disputes to the Joint Board. The trial examiner cited two cases supporting his finding that Masonry had agreed to be bound, while the Board cites three other cases. None helps to resolve this controversy. In both Iron Workers Local 25 (Pittsburgh Plate Glass Co.) (1959) 125 N.L.R.B. 1035, and in Local 825, Operating Engineers (Burns & Roe, Inc.) (1967) 162 N.L.R.B. 1617, remanded for consideration of Board's order (1971) 400 U.S. 297, 91 S.Ct. 402, 27 L.Ed.2d 398, the subcontractor explicitly agreed to abide by the Joint Board's determination. In Carpenters Local 753 (Blount Bros. Corp.) (1969) 175 N.L.R.B. No. 81, 1969 CCH NLRB Dec. 26, 232, there was no evidence that the subcontractor had agreed to submit disputes to the Joint Board. In Electrical Workers Local 26 (McCloskey & Co.) (1964) 147 N.L.R.B. 1498, the Board found that the employer bound itself to the Joint Board by submitting information and requesting that the Joint Board reconsider and clarify its decision. Masonry took no steps to affirm the Joint Board's assumption of authority. The Board found no agreed method of settling disputes in Local 2, Bricklayers (Decora, Inc.) (1965) 152 N.

L.R.B. 278, because the dispute was intraunion and therefore beyond the Joint Board's jurisdiction.

We are not prepared to construe the clause to bind Masonry to each and every provision in Hahn's contract with the Laborers absent more persuasive reasons. To do so would negate several provisions in Masonry's collective bargaining agreement with the Laborers that are more favorable to Laborers than corresponding provisions in the Hahn contract. Because Masonry is not a signatory to any agreement clearly requiring submission of jurisdictional disputes to the Joint Board, we conclude that there was no agreed method for voluntary settlement of this dispute, and we remand the cause to the Board to resolve the dispute.

■ We note that Espinoza's statement to Hahn can reasonably be interpreted as a threat to call a strike of the Laborers employed by Hahn and Masonry. The object of the strike would be to force Hahn to assign the disputed work to the Laborers. The Laborers argue that Hahn is not an employer within the meaning of section 8(b) (4) (ii) (D) of the Act, 29 U.S.C. § 158(b) (4) (ii) (D), because the employees of the subcontractor Masonry are not controlled by Hahn. However, the threat entailed removal of all workers represented by the Laborers. Certain of these workers are employed by Hahn. The Act embraces their threat to strike Hahn in order to force Hahn to assign subcontracted work to Laborers. (See Local 450, International Union Operating Engineers v. Elliott (5th Cir. 1958) 256 F.2d 630, 635.)

The application of the Board for enforcement of its order is denied, and the cause is remanded for a hearing under section 10(k) of the Act, 29 U.S.C. § 160(k), for further proceedings consistent with the views herein expressed.

extend to and bind such construction subcontract work, and provisions shall be made in such subcontract for the observance by said subcontractor of the

terms of this Agreement." (Construction, Production and Maintenance Laborers Union, Local 383 v. NLRB (9th Cir. 1963) 323 F.2d 422, 423.)