486 F.2d 1266
 84 L.R.R.M. (BNA) 2581, 159 U.S.App.D.C. 6,
72 Lab.Cas. P 13,975
 OIL, CHEMICAL AND ATOMIC WORKERS, INTERNATIONAL UNION,
AFLCIO, et al., Petitioners,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent, Shell Oil
Company and its Divisions, Shell Chemical Company,
and Shell Development Co., Intervenors.
 No. 72-1277.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Jan. 16, 1973.
Decided Sept. 28, 1973.
 
 Jerry D. Anker, Washington, D. C., for petitioners.
 Elliott Moore, Atty., N. L. R. B., with whom Marcel Mallet-Prevost, Asst. Gen. Counsel, N. L. R. B., at the time the brief was filed, was on the brief, for respondent.
 David M. Heilbron, San Francisco, Cal., with whom William W. Schwarzer, San Francisco, Cal., and Bernard Marcus, New Orleans, La., were on the brief, for intervenors.
 Before BAZELON, Chief Judge, TUTTLE,* Senior Circuit Judge for the Fifth Circuit, and MacKINNON, Circuit Judge.
 BAZELON, Chief Judge:
 
 
 1
 The Oil, Chemical and Atomic Workers petition for review of an order of the National Labor Relations Board adopting a Trial Examiner's proposed opinion and order dismissing a complaint that charged Shell Oil Company with violations of Sections 8(a)(1) and (5) of the National Labor Relations Act.[1] The complaint alleged that Shell unlawfully refused to meet and bargain at a single time and place with the OCAW representatives of 19 separate bargaining units over uniform proposals and counterproposals concerning several of Shell's company-wide fringe benefit plans.
 
 
 2
 The facts are not in dispute, and the question presented by the petition is whether Shell's refusal, in the circumstances of this case, was an unfair labor practice. We hold that it was not and deny the petition.
 
 
 3
 About 6,000 of Shell's 36,000 employees are represented by 19 locals of the OCAW. Another 4,000 are represented by about 60 bargaining units not affiliated with the OCAW. Over the years Shell has negotiated all collective bargaining units at a local level, and has never engaged in multi-unit or company-wide negotiations.
 
 
 4
 The five benefit plans at issue were initiated between 1938 and 1952, and apply to all employees, supervisors, and managers, without regard to union affiliation. The provisions of the plans are not written into the local collective bargaining agreements, and may be modified at any time. Shell has always submitted its proposed modifications to the locals unless excused by the applicable local agreement, and it has received proposals and counterproposals from the locals during collective bargaining negotiations.
 
 
 5
 With minor exceptions, however, the Trial Examiner found that "Shell has never responded in contract negotiations to union proposals for benefit changes by agreeing to accept any union proposal, in whole or in part."[2] All changes, he found, are centrally determined at Shell headquarters, and Shell follows a policy of uniformity in the implementation of such changes.
 
 
 6
 On the other hand, he found that the OCAW "has never made its failure to achieve results in local bargaining on benefits issues a subject for strike action,"[3] despite the fact that "individual unit bargaining on the benefit plans has been ineffective."[4] He attributed this to the mutual benefits to Shell and its employees of a uniform plan, the difficulties of maintaining that uniformity through local bargaining, and, "possibly," because the benefits "ranked in the top bracket of American industry and never gave rise to employee discontent."[5]
 
 
 7
 Following a Shell modification proposal in May of 1968, the OCAW's Shell Council, which is composed of local representatives of the 19 OCAW Shell units, attempted to change this pattern. OCAW's International President wrote Shell a letter in which he presented a uniform set of counterproposals on behalf of all 19 Shell units and requested that Shell meet with representatives of OCAW and its locals "at some reasonable time and single location for the purpose of collective bargaining in regard to the . . . plans."
 
 
 8
 Shell rejected this request, stating that the company would continue its practice of negotiation over all changes with the local units, but would not participate in meetings on a multi-unit basis. The OCAW immediately filed this unfair labor practice complaint.
 
 
 9
 Discussions continued, and Shell added an offer to meet with any single unit and discuss moving the traditional bargaining place. Then, in its final statement at a meeting with OCAW representatives in May of 1970, Shell indicated that it was willing to meet at central locations in geographical areas where several bargaining units were located, but insisted that the bargaining remain on a single unit basis. The OCAW remained firm in its demand for multiunit discussions.
 
 
 10
 Under section 8(a)(5) of the National Labor Relations Act, an employer is under an obligation to "bargain collectively with the representatives of his employees, subject to the provisions of section [9(a)]."[6] "Collective bargaining" is defined by section 8(d) as:
 
 
 11
 the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment . . . and the execution of a written contract incorporating any agreement reached if requested by either party.[7]
 
 
 12
 The Board, supported by the courts, has held that any subject of negotiations that falls within the definition of collective bargaining is a "mandatory" subject that either party can raise and insist that the other party agree to as a condition to reaching agreement.[8] Any other subject, if not illegal, is a "voluntary" subject that may be discussed, but that neither party may demand as a condition to an agreement.[9]
 
 
 13
 Under this framework, multi-unit bargaining has long been held a voluntary subject.[10] Allowing a party to insist on bargaining on other than a unit basis, it has been thought, would interfere with another provision of the Act. Section 9(a), to which the duty to bargain in good faith is made subject, states:
 
 
 14
 Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representative of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment.[11]
 
 
 15
 Under section 9(b), the task of designating the "appropriate" unit "for the purposes of collective bargaining" belongs exclusively to the National Labor Relations Board.[12] While it has been held that the parties may agree to consolidate units for purposes of collective bargaining,[13] respect for the stability of industrial relations imported by the Board's determinations has led to the rule that a party may not be forced to bargain on other than a unit basis.[14]
 
 
 16
 The OCAW seeks to compel multi-unit bargaining despite this well established rule. To do so, it presents two novel legal theories, which we discuss in turn.
 
 
 17
 First, it focuses on the local negotiations and asserts that Shell's conduct concerning multi-unit sessions is a violation of its duty to bargain in good faith about the fringe benefit plans. The premise of this argument is that there can be no such thing as good faith collective bargaining in the local units found appropriate by the Board in the particular circumstances of this case. Thus, the OCAW contends, Shell is obligated to engage in combined discussions concerning the fringe benefit plans.
 
 
 18
 To distinguish the cases that affirmatively approve an employer's insistence on local units, the OCAW asserts that section 9's unit certification requirements are directed only at ensuring that bargaining representatives are chosen to serve as exclusive representatives of stable and "appropriate" units. So long as those units are retained, says the union, no policy of the Act prohibits joint participation in bargaining sessions. Although it concedes that merger of units for all bargaining purposes might constitute a merger and destruction of the Board-determined units, the OCAW asserts that discussions on limited issues in which there is no demand that the employer agree with all units or none is not such a violation of the purpose of section 9.
 
 
 19
 OCAW does not appear to press this argument, and for good reason. The Trial Examiner found, with support in the record, that the OCAW's demand had been presented to Shell as a complete merger of the local units for purposes of the fringe benefits' negotiations.[15] OCAW had, he said, in effect demanded that Shell bargain with a single representative and reach a single uniform agreement. Shell was thus free to reject the proposal despite the claimed impact on fringe benefits negotiations.
 
 
 20
 We need not reach this issue, however. Even if the OCAW's interpretation of the statutory scheme is assumed to be correct, and its version of the meaning of its demand accepted, there is no basis for finding that Shell violated section 8(a)(5).
 
 
 21
 Section 8(a)(5) is not limited to direct refusals to negotiate in good faith. As the Supreme Court said in N. L. R. B. v. Katz, the Board is authorized by this section "to order the cessation of behavior which is in effect a refusal to negotiate, or which directly obstructs or inhibits the actual process of discussion, or which reflects a cast of mind against reaching agreement."[16]
 
 
 22
 But the Trial Examiner found, with ample support in the record, that OCAW had failed "to generate any pressure in support of its bargaining demands," and that it never filed an unfair labor practice charge claiming that the "ineffective" bargaining was attributable to Shell's failure to bargain in good faith.[17] It takes more than the bare showing that bargaining has been ineffective to charge one of the negotiating parties with an unfair labor practice.
 
 
 23
 We are cognizant of the fact that the OCAW may not want local bargaining because it fears that Shell would respond by dropping the company-wide benefits program and whatever economic advantages the union derives from the uniform plan. But, here too, the OCAW is in no position to say that Shell is in violation of the Act, for the Company has no obligation to structure its bargaining so as to preserve that benefits program.
 
 
 24
 If the OCAW wishes to obtain effective bargaining on the company-wide programs, it has many ways to proceed.[18] If it wishes to bring the scope of collective bargaining negotiations within the group of section 8(d) mandatory subjects of bargaining, and thus shortcircuit the more cumbersome methods of attempting to amass bargaining power available to it, the union may test its theory by demanding multi-unit bargaining on the benefits issue and thus subject itself to an unfair labor practice charge. But the OCAW is in no position to blame Shell for its own lack of initiative, and this record shows no more than that.
 
 
 25
 OCAW's second argument is more ingenious, and avoids the deficiencies in this record, but it is not persuasive. Turning from section 8(d)'s requirement that the parties confer in good faith, the OCAW fixes on the section's requirement that the parties "meet at reasonable times." Under the guise of defining "reasonable," the union would have us establish a rule that produces multi-unit bargaining on selected subjects. The parties, or the Board if necessary, should look to the nature of the issue in dispute, the extent of the interest of potential participants, and the extent to which bargaining on that point has been "meaningful," and set a time and place for negotiations that would put the employer across a bargaining table from the proper group of local units.
 
 
 26
 We do not think that the phrase will support the weighty legal rule that OCAW attributes to it. As the Trial Examiner pointed out, the legislative history of the Act provides no hint of a congressional intent to turn the requirement that the parties "meet" into a mechanism for dictating what parties shall participate in negotiations on a particular subject of bargaining.[19] The Board and the courts have applied this language only to cases in which the charged party has refused to negotiate with a single unit at any reasonable time and place.[20] In the absence of some indication that Congress intended more than this plain meaning of its words, we cannot accept OCAW's attempt to turn the phrase into a rule governing participation in multi-unit negotiations.
 
 
 27
 Petition denied.
 
 
 28
 TUTTLE, Senior Circuit Judge, concurs in the result.
 
 MacKINNON, Circuit Judge:
 
 29
 I concur generally in the opinion but not in the dicta that suggests possible means of obtaining "effective" bargaining on company-wide programs.
 
 
 
 *
 Sitting by designation pursuant to 28 U.S.C. Sec. 294(d)
 
 
 [1]
 29 U.S.C. Secs. 158(a)(1), (5) (1970)
 
 
 [2]
 Trial Examiner's Findings of Fact, No. 2-CA-11628, Pt. III.B., p 16 (August 6, 1971)
 
 
 [3]
 Id. p 20
 
 
 [4]
 Id. Pt. III.D., p 10
 
 
 [5]
 Id
 
 
 [6]
 29 U.S.C. Sec. 158(a)(5) (1970)
 
 
 [7]
 29 U.S.C. Sec. 158(d) (1970)
 
 
 [8]
 See NLRB v. American Insurance Co., 343 U.S. 395, 72 S.Ct. 824, 96 L.Ed. 1027 (1952)
 
 
 [9]
 See NLRB v. Borg-Warner Corp., 356 U.S. 342, 78 S.Ct. 718, 2 L.Ed.2d 823 (1958)
 
 
 [10]
 See, e.g., id.; NLRB v. IBEW, 266 F.2d 349 (5th Cir. 1959)
 
 
 [11]
 29 U.S.C. Sec. 159(a) (1970)
 
 
 [12]
 29 U.S.C. Sec. 159(b) (1970). See, e.g., NLRB v. Southern Calif. Dist. Council of Laborers, 443 F.2d 220 (9 Cir. 1971)
 
 
 [13]
 Cf. NLRB v. Dover Tavern Owners' Ass'n, 412 F.2d 725 (3d Cir. 1969)
 
 
 [14]
 See, e. g., Douds v. Int'l Longshoremen's Ass'n, 241 F.2d 278 (2d Cir. 1957); Publishers Ass'n v. NLRB, 364 F.2d 293 (2d Cir.), cert. denied, 385 U.S. 971, 87 S.Ct. 509, 17 L.Ed.2d 435 (1966); American Radiator & Standard Sanitary Corp. v. NLRB, 381 F.2d 632 (6 Cir. 1967)
 
 
 [15]
 Trial Examiner's Findings of Fact, supra note 2, Pt. III.D., p 6. He also pointed out:
 The Union in its brief substantially concedes that the 19 OCAW units could not be combined into a single unit that would be generally appropriate for the purposes of bargaining, because, as it states, they "are widely separated from each other geographically; they vary greatly in the type of product they produce or service they perform; there are significant differences between them with respect to wages, hours, and working conditions; and to a large degree their labor relations are handled on a local basis."
 Id. p 9.
 
 
 [16]
 369 U.S. 736, 747, 82 S.Ct. 1107, 1114, 8 L.Ed.2d 230, 238 (1962). See Caroline Farms Division of Textron, Inc. v. NLRB, 401 F.2d 205 (4th Cir. 1968)
 
 
 [17]
 Trial Examiner's Finding of Fact, supra note 2, Pt. III.D., p 10
 
 
 [18]
 The Trial Examiner pointed out that the locals could bargain to an impasse, and that an unfair labor practice charge could be filed alleging that Shell had caused the "ineffective" bargaining. Id. p 10. OCAW might, for instance, attempt to show that Shell had in effect disabled its bargaining representatives from altering positions at all. See NLRB v. General Electric Co., 418 F.2d 736 (2d Cir. 1969)
 Nothing prevents the OCAW's Shell Council from coordinating the demands of the locals. Moreover, any OCAW local unit can designate representatives of the other 18 units to sit in as its bargaining representatives, and thus ensure full coordination. See, e.g., AFL-CIO Joint Negotiating Comm. of Phelps Dodge Corp. v. NLRB, 459 F.2d 374 (3d Cir. 1972), cert. denied, 409 U.S. 1059, 93 S.Ct. 553, 34 L.Ed.2d 511 (1972).
 But the entire issue may-at least in this case-be a teapot tempest. The Trial Examiner noted, in his final footnote:
 Bargaining by OCAW for all its units on a combined basis might, for reasons earlier stated, improve the conditions for more meaningful bargaining, but it would not eradicate the impediments to "effective" bargaining outlined above, for the OCAW would still be dealing with Shell as a representative of only 14 percent of the employees covered by the benefit plans.
 
 
 [19]
 See Trial Examiner's Findings of Fact, supra note 2, n. 19
 
 
 [20]
 See, e.g., Caroline Farms Division of Textron, Inc. v. NLRB, 401 F.2d 205 (4th Cir. 1968); Mid-America Transportation Co. v. NLRB, 325 F.2d 87 (7th Cir. 1963); NLRB v. P. Lorillard Co., 117 F.2d 921 (6 Cir. 1941)